# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BARBARA MACHOWICZ, individually and on behalf of all others similarly situated | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:14-cv-1394 |
| v. | ) ) | Hon. James F. Holderman |
| KASPERSKY LAB, INC., | ) ) | |
| Defendant. | ) | |

# MEMORANDUM OF LAW IN SUPPORT OF KASPERSKY LAB INC.'S MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM ON <u>WHICH RELIEF CAN BE GRANTED</u>

# TABLE OF CONTENTS

I. PRELMINARY STATEMENT ............................................................................... 1

II. FACTUAL BACKGROUND ............................................................................... 2

    A.    General Factual Background ............................................................. 2

    B.    Allegations In the Complaint That Relate To the Use of KSS on a Generic Test Computer .............................................................................. 3

    C.    Allegations In the Complaint That Relate To KSS's Purportedly Fraudulent Scan of Machowicz's Computer .......................................... 5

    D.    Claims Asserted Against Kaspersky .................................................. 6

III. APPLICABLE LAW ...................................................................................... 7

IV. ARGUMENT ................................................................................................. 9

    A.    Machowicz's Fraudulent Inducement Claim Should Be Dismissed ..................... 9

        1.    To Be Sufficient Machowicz's Pleading of Fraud Must Identify With Particularity What Vulnerabilities KSS Falsely Reported As Existing On Her Computer and Must Explain Why or How the KSS Reports Were False ............................................................. 9

        2.    The Complaint Does Not Describe What Vulnerabilities KSS Reported Finding on Machowicz's Computer Or That These Are Not Vulnerabilities ...................................................................... 10

        3.    Even Assuming That the Vulnerabilities That KSS Reported Finding On Machowicz's Computer Were the Eleven "Other Issues" Described In Section II of the Complaint, the Complaint Does Not and Cannot Establish That the KSS Report On Machowicz's Computer Was False or Fraudulent ................................. 11

    B.    Machowicz's Claims Under Both the Unfairness and Deception Prongs of the ICFA Should Also Be Dismissed For Failure to State a Claim Under Rules 12(b)(6) and 9(b) ............................................................... 12

        1.    Machowicz Cannot Maintain an ICFA Claim Under the Deception Prong Because She Failed to Allege How the Alleged Representations Were False and Her Allegations Are Contradictory ................................................................. 13

        2.    As a Matter of Law, Machowicz Cannot Maintain an ICFA Claim Under the Unfairness Prong Absent Allegations of Oppressiveness and Lack of Meaningful Choice ............................................... 14

    C.    Machowicz' Unjust Enrichment Claim Should Also Be Dismissed .................... 16

CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ackerman v. Nw. Mut. Life Ins. Co.*,
   172 F.3d 467 (7th Cir.1999) ................................................................8

*Association Ben. Services, Inc. v. Caremark RX, Inc.*,
   493 F.3d 841 (7th Cir. 2007) ............................................................16

*Athey Products Corp. v. Harris Bank Roselle*,
   89 F.3d 430 (7th Cir. 1996) ...............................................................16

*Bantsolas v. Superior Air & Ground Ambulance Transp., Inc.*,
   Civ. No. 01-6168, 2004 WL 609793 (N.D. Ill. Mar.22, 2004)................8

*Borsellino v. Goldman Sachs Grp., Inc.*,
   477 F.3d 502 (7th Cir. 2007) ..............................................................8

*CardioNet, Inc. v. LifeWatch Corp.*,
   Civ. No. 07- 6625, 2008 WL 567031 (N.D. Ill. Feb. 27, 2008) .............9

*Ciszewski v. Denny's Corp.*,
   Civ. No. 09- 5355, 2010 WL 2220584 (N.D. Ill. June 2, 2010) ............15

*FTC v. Sperry & Hutchinson Co.*,
   405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972)..............................15

*Fugman v. Aprogenex, Inc.*,
   961 F.Supp. 1190 (N.D. Ill. 1997) .......................................................8

*Global Total Office Ltd. P'ship v. Global Allies, LLC*,
   Civ. No. 10-1896, 2011 WL 3205487 (N.D. Ill. July 28, 2011)............14

*Gomez v. Illinois State Bd. of Education*,
   811 F.2d 1030 (7th Cir.1987) ..............................................................7

*Greifenstein v. Estee Lauder Corp., Inc.*,
   Civ. No. 12-09235, 2013 WL 3874073 (N.D. Ill. July 26, 2013) .........14

*Haught v. Motorola Mobility, Inc.*,
   Civ. No. 12-2515, 2012 WL 3643831 (N.D. Ill. Aug. 23, 2012) ...........8

*Hayduk v. Lanna*,
   775 F.2d 441 (1st Cir.1985)..................................................................7

*In re Park*,
314 B.R. 378 (Bankr. N.D. Ill. 2004) ..................................................................8

*Michalowski v. Flagstar Bank, FSB*,
Civ. No. 01- 6095, 2002 WL 113905 (N.D. Ill. Jan. 25, 2002) ................................9

*Padilla v. Costco Wholesale Corp.*,
Civ. No. 11- 7686, 2012 WL 2397012 (N.D. Ill. June 21, 2012) ...........................14

*Petri v. Gatlin*,
997 F.Supp. 956 (N.D. Ill. 1997) ..........................................................................9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) .............................................................................9, 16

*Rao v. BP Prods. N. Am., Inc.*,
589 F.3d 389 (7th Cir. 2009) ................................................................................8

*Reid v. Unilever U.S., Inc.*,
964 F. Supp. 2d 893 (N.D. Ill. 2013) ................................................................8, 9

*Sindles v. Saxon Mortgage Servs., Inc.*,
Civ. No. 11-7224, 2012 WL 1899401 (N.D. Ill. May 22, 2012) ...........................10

*Skycom Corp. v. Telstar Corp.*,
813 F.2d 810 (7th Cir.1987) .................................................................................7

*Uni Quality, Inc. v. Infotronx, Inc.*,
974 F.2d 918 (7th Cir.1992) .................................................................................9

*Veal v. First Am. Sav. Bank*,
914 F.2d 909 (7th Cir. 1990) .......................................................................7, 8, 10

*Wigod v. Wells Fargo Bank, N.A.*,
673 F.3d 547 (7th Cir. 2012) ...............................................................................10

**OTHER CASES**

*Alliance Acceptance Co. v. Yale Ins. Agency, Inc.*,
271 Ill. App. 3d 483, 208 Ill. Dec. 49, 648 N.E.2d 971 (1st Dist. 1995)................16

*Connick v. Suzuki Motor Co., Ltd.*,
675 N.E.2d 584 (Ill. 1996) .....................................................................................9

*Martis, D.C. v. Grinnell Mutual Reins. Co.*,
388 Ill. App. 3d 1017, 905 N.E.2d 920 (3d Dist. 2009) ........................................16

*Oliveira v. Amoco Oil Co.*,
776 N.E.2d 151 (Ill. 2002) ...................................................................................14

2

*Robinson v. Toyota Motor Credit Corp.*,
    201 Ill. 2d 403, 775 N.E.2d 951 (2002) ...................................................................15, 16

*Tudor v. Jewel Food Stores, Inc.*,
    288 Ill. App. 3d 207, 681 N.E.2d 6 (1st Dist. 1997) .................................................15

**OTHER STATUTES**

815 ILCS § 505/2 ........................................................................................................13

**RULES**

Fed. R. Civ. P. 8(a)(2) ...................................................................................................8

Fed. R. Civ. P. 9(b) .............................................................................................. passim

Fed. R. Civ. P. 12(b)(6) .........................................................................................13, 17

# I. **PRELMINARY STATEMENT**

In this putative class action, the named Plaintiff, Barbara Machowicz ("Machowicz" or "the Plaintiff") asserts three claims against Kaspersky Lab, Inc. ("Kaspersky"). The first is for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), the second is for common law fraudulent inducement, and the third is for unjust enrichment. All three claims arise out of the same basic allegation: that Kaspersky offered consumers a free piece of software called Kaspersky Security Scan ("KSS") that was designed to falsely report certain Windows operating system and program settings as security risks on users' computers in order to deceive consumers into unnecessarily purchasing security software from Kaspersky.

Allegations of fraud are always serious, but are particularly problematic in the present circumstances. Kaspersky is a respected, award-winning computer security company that is in the business of selling software that is designed to protect consumers **against** fraud. Any suggestion that Kaspersky might be harming its consumers has the potential to irreparably harm Kaspersky, injure its business, and affect its longstanding and stellar reputation.

To guard against such potentially defamatory effects, Fed. R. Civ. P. 9(b) requires that fraud claims be pleaded with sufficient particularity to assure that the claim is responsible and capable of being supported with facts. At a minimum, Rule 9(b) requires that Plaintiff identify with particularity the specific misrepresentation that Kaspersky is alleged to have made, and explain exactly how or why that alleged representation was false or deceptive and that it caused the Plaintiff's injury.

Plaintiff's fraud allegations fail to meet Rule 9(b)'s heightened pleading requirements. While the Complaint in this case broadly alleges that KSS reported that Plaintiff Machowicz's computer had certain vulnerabilities that placed her computer at risk, the Complaint fails to

specify what vulnerabilities KSS reported as existing. This lack of specificity renders Plaintiff's claim of fraud deficient, because the Complaint does not allege that <u>every</u> KSS report is false. Rather, the Complaint alleges only that KSS's scan reports **may** be false depending on the particular problem reported and the configuration of the computer (*e.g.,* AutoRun issues reported in computers running "newer" Windows operating systems). Thus, the Complaint's bare conclusory allegation that Machowicz received a problem report from KSS that stated her computer was at risk is legally insufficient to plead a claim of fraud, let alone satisfy the specificity requirements of Rule 9(b). Thus, Machowicz's claims of fraudulent inducement, violation of the "deception" prong of the ICFA, and of unjust enrichment (which is wholly dependent on Machowicz's fraud claims), must all be dismissed.

Plaintiff's claim under the ICFA "unfairness" prong must also be dismissed. Plaintiff Machowicz failed to plead various required elements under the "unfairness" prong, namely that Kaspersky's design of KSS (1) violated public policy; (2) was unethical, oppressive or unscrupulous; (3) caused her substantial injury; or (4) that she "had no alternative but to pay" for Kaspersky's software.

For these reasons, and those set forth in greater detail below, Plaintiff's Complaint should be dismissed in its entirety for failure to state a claim for which relief can be granted.

## II. <u>FACTUAL BACKGROUND</u>

### A. **General Factual Background**

Kaspersky is a well-regarded and internationally recognized developer of computer security software. Complaint, ¶ 1. One of the world's largest privately held vendors of software security products, Kaspersky is ranked fourth in the global ranking of antivirus software vendors, and its products and technology provide protection to over 300 million users worldwide. *Id.*, ¶ 8.

Among its award-winning consumer software offerings are Kaspersky Pure ("Pure"), Kaspersky Internet Security ("KIS"), and Kaspersky Anti-Virus ("KAV"), which generally range in price between $40.00 and $60.00.  *Id.*, ¶ 9.

In addition to its "for sale" products, Kaspersky offers to consumers, as a free software download over the Internet, a software product called Kaspersky Security Scan ("KSS").  *Id.*, ¶ 10.  Kaspersky advertises KSS as being designed to (i) scan a user's computer for known malware and security vulnerabilities (such as computer viruses and other malicious software), and (ii) to advise the user as to his or her computer's security status.  *Id.*, ¶ 11 and Fig. 2. Kaspersky also states on its websites that it provides the user with advice on how to remedy security problems that have been identified by KSS.  *Id.*, ¶ 12.

**B.** **Allegations In the Complaint That Relate To the Use of KSS on a Generic Test Computer**

The entirety of Section II of the Complaint, which comprises paragraphs 10 through 34, consists of a description of the operation of KSS on a generic "new" test computer.  Complaint, ¶ 14.  Notably missing from the Complaint is a description of the configuration of that computer (*e.g.*, what kind of computer it is, what version or Microsoft Windows the computer is running, whether the computer has virus protection on it already and if so what kind, *etc.*).  Nor does the Complaint identify who the owner of the computer is, or any basic information about who executed the test and the circumstances underlying the test.

According to paragraph 14 of the Complaint, scanning the test computer using KSS resulted in a scan report being generated, which is depicted in Figure 4 of the Complaint.

As may be seen from Figure 4, the KSS report divides potential "problems" into four categories:  "computer protection," malware," "vulnerabilities," and "other issues."  All eleven "problems" that KSS detected on the generic test computer that fit into the "other issues"

category.  Judging from the number "0" listed next to each of the other three categories, as alleged KSS detected no issues on the test computer relating to "computer protection," "malware," or "vulnerabilities."  The Complaint, however, does not even give credit to Kaspersky and acknowledge the truthfulness or accuracy of KSS's findings with respect to "computer protection," "malware," or "vulnerabilities."  Rather, the Complaint focuses solely on the eleven "other issues," a listing of which is depicted in Figure 6.

The Complaint divides the eleven "other issues" detected by KSS on the generic test computer (*see* Figure 6) into two basic categories for purposes of discussion: (i) purported AutoRun issues, and (ii) Windows and Internet Explorer Issues.  Complaint, ¶ 19.  It then proceeds to allege that each of the reported "other issues" are default Windows operating system or program settings[1] that are necessarily present in all Windows computers, and to explain how and why none of the "other issues" presents a "threat"[2] to the security of a computer.  *Id.*, ¶ 20-31.

With respect to the AutoRun issues, the Complaint openly admits that "[t]here *are* certain security risks associated with the use of AutoRun" on "older" versions of Windows.  Therefore, on its face, the Complaint refutes the allegation of fraud because it is not "categorically

---

[1] In fact, the Complaint appears to rely heavily on the assumption that default Windows settings are not vulnerable to attack.  While not probative in a dismissal motion, this proposition is categorically false.  Should the Complaint be sustained, Kaspersky can prove that every "other issue" that KSS detects consists of a default Windows or program setting that is well-known to those in the computer security industry to make computers vulnerable to malware attack.

[2] In the Complaint, the Plaintiff repeatedly alleges that KSS reports these "other issues" as "threats" to a user's computer.  *See, e.g.,* Complaint, ¶¶ 19, 23, 26, 27, 29, 30, 31, 32, 33, and 34.  KSS, however, does not report "other issues" as "threat."  Rather, as is shown in the KSS screen shots depicted in the Complaint and the accompanying descriptions, KSS reports "other issues" as being "problems" or "potential vulnerabilities" that "could" put the user's computer at risk.  *See id.*, ¶¶ 15-16 and Figs. 4 and 5.  The Court should note that the term "threat" is used by KSS to refer to security issues that pose an immediate or higher level of risk, such as the presence of a computer virus or other malware on the user's system.

misleading to say that having AutoRun turned 'on' may pose a security risk" on those "older" versions. *Id.*, ¶ 21. However, because the Complaint is devoid of basic facts, it fails to specify what versions of Windows it considers to be "older" for purposes of determining whether the AutoRun issues constitute a real security vulnerability.

**C.      Allegations In the Complaint That Relate To KSS's Purportedly Fraudulent Scan of Machowicz's Computer**

As to the Plaintiff, the Complaint alleges that on or around September 2013, Machowicz was "browsing the Internet for software to optimize and protect her computer." Complaint, ¶ 38. While searching the Internet, Machowicz alleges that she read a Kaspersky advertisement for KSS that was "substantially similar" to the ones shown in Figures 1 and 2 of the Complaint. *Id.*

After viewing this advertisement, Machowicz allegedly visited a Kaspersky website where she read "express warranties about [KSS's] capabilities, which were the same, or substantially similar to the representations described in Paragraphs 12-13 and depicted in Figures 1-2" of the Complaint. *Id.*, ¶ 39. The Complaint contains no additional details about the KSS advertisement Machowicz actually read, the "express warranties" she purportedly saw on Kaspersky's website, or exactly what language was allegedly used by Kaspersky in either the advertisement or the "warranties" to describe KSS.

The Complaint then goes on to identify two specific representations by Kaspersky – both taken from Figure 2 of the Complaint – that Machowicz allegedly relied on when she decided to download KSS for free from the Internet. These two specific representations were that KSS (i) "checks for known malware and security vulnerabilities"" and (ii) "provides advice on how to remedy security problems that have been identified by [KSS]." *Id.*, ¶ 40. The Complaint does not state that Machowicz relied on either of these representations to purchase any Kaspersky

software product. Rather, the Complaint states that Machowicz relied on these statements in deciding to try Kaspersky's free KSS scanning tool. *Id.*

After she allegedly installed KSS, Machowicz purportedly used KSS to conduct a scan of her computer. *Id.*, ¶ 41. The Complaint then concludes that "Machowicz recalls that KSS reported that a number of 'problems [were] found' which were causing her computer to be 'at risk.'" *Id.*

The Complaint contends that in reliance on the accuracy of KSS's scan report that "problems [were] found" on Machowicz's computer that were causing her computer to be "at risk," Machowicz purportedly clicked on a button displayed by KSS that prompted her to "CLICK FOR A SOLUTION." *Id.*, ¶ 42. Upon clicking said button, Machowicz was directed to a Kaspersky website where Machowicz says that she viewed the web page depicted in Figure 5 of the Complaint, which stated that "[KSS] found a potential vulnerability that could put your PC at risk. Kaspersky products provide recommendations on how to fix these issues. PURCHASE A SECURITY SOLUTION NOW," and further stated that "Kaspersky products will ensure that you are always protected." *Id.*, ¶ 42.

Finally, the Complaint alleges that Machowicz, in reliance on the accuracy of KSS's scan report, purportedly purchased KIS software from Kaspersky for $54.95 "in an effort to repair the problems detected by KSS," but that "[c]ontrary to Kaspersky's representations, KSS . . . merely returned false 'problems' and misrepresented the actual condition of her computer . . ." *Id.*, ¶ 44. These are all conclusory allegations with no details or particulars to corroborate them.

**D.     Claims Asserted Against Kaspersky**

Based on the allegations outlined above, the Complaint asserts three claims against Kaspersky:

- a statutory claim for violation of both the "deception" and "unfairness" prongs of the ICFA;

- a claim for fraudulent inducement under Illinois common law; and

- a claim for unjust enrichment under Illinois common law.

All of claims asserted against Kaspersky, with the exception of the ICFA "unfairness" claim, either directly allege fraud or sound in fraud.

## III.  APPLICABLE LAW

Dismissal for failure to state a claim is proper if it appears that plaintiffs can prove no set of facts that would entitle them to relief. *Veal v. First Am. Sav. Bank*, 914 F.2d 909, 913 (7th Cir. 1990).  In order to prevail upon a motion to dismiss, the defendant must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence. *Gomez v. Illinois State Bd. of Education*, 811 F.2d 1030, 1039 (7th Cir.1987).  In addition, when the defendant is charged with fraudulent activity, the plaintiff must state with particularity the circumstances constituting fraud.  Fed. R. Civ. P. 9(b). The plaintiff must identify particular statements and actions and specify why they are fraudulent.  *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 818 (7th Cir.1987).  Conclusory allegations do not satisfy the requirements of Rule 9(b) and subject the pleader to dismissal.  *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir.1985).  In other words, the plaintiff must plead the "who, what, when, where, and how," of the alleged fraud.  *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 401 (7th Cir. 2009).

The particular words or actions by the defendant must be alleged and, importantly, why the alleged conduct is fraudulent must be explained. *See Veal v. First Am. Sav. & Loan*, 914 F.2d 909, 913 (7th Cir. 1990); *compare Bantsolas v. Superior Air & Ground Ambulance Transp., Inc.*, Civ. No. 01-6168, 2004 WL 609793, at *3 (N.D. Ill. Mar.22, 2004) (granting motion to dismiss

because the plaintiff failed to cite "any specific false claims, let alone allege[ ] why or how certain claims were false"), *and In re Park*, 314 B.R. 378, 383(Bankr. N.D. Ill. 2004) (dismissing case when, among other things, the plaintiff failed to allege "what it was about these alleged actions that made them fraudulent"); *with Fugman v. Aprogenex, Inc.*, 961 F.Supp. 1190, 1194-1195 (N.D. Ill. 1997) (denying 9(b) objection where plaintiff described numerous fraudulent acts, identifying not only the speaker, time and substance but also "why the plaintiffs believe [them] to have been false or misleading").

The heightened pleading requirement of Rule 9(b) mandates that a complaint containing allegations of fraud have more substance in order to survive a motion to dismiss than a complaint based on another cause of action governed only by the minimal pleading standards of Rule 8(a)(2). *See Haught v. Motorola Mobility, Inc.*, Civ. No. 12-2515, 2012 WL 3643831, at *3 (N.D. Ill. Aug. 23, 2012) (citing *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir.1999)). This requirement addresses the "great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 905 (N.D. Ill. 2013) (quoting *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)). To that end, "[a] plaintiff claiming fraud or mistake must do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate." *Id.*

Claims arising under the Illinois Consumer Fraud and Deceptive Business Practice Act (the "ICFA") are subject to the same heightened pleading standard under Rule 9(b). *See Michalowski v. Flagstar Bank, FSB*, Civ. No. 01- 6095, 2002 WL 113905, at *5 (N.D. Ill. Jan. 25, 2002) (*citing Petri v. Gatlin*, 997 F.Supp. 956, 973 (N.D. Ill. 1997); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996)). A plaintiff asserting an ICFA claim sounding in

fraud must "identi[f]y ... the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *See Michalowski*, 2002 WL 113905, *5 (citing *Uni Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir.1992)).

Here, Machowicz's claims for fraudulent inducement, unjust enrichment, and her statutory claim under the "deception prong" of the ICFA all sound in fraud. Each is based on the purported failures of KSS to accurately scan and report problems in order to purportedly induce consumers into purchasing other Kaspersky products. These claims must, therefore, meet the particularity requirements of Rule 9(b). *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011); *see also CardioNet, Inc. v. LifeWatch Corp.*, Civ. No. 07- 6625, 2008 WL 567031, at *2 (N.D. Ill. Feb. 27, 2008) (Rule 9(b) applies to ICFA claims sounding in fraud).

## IV.  ARGUMENT

### A.  Machowicz's Fraudulent Inducement Claim Should Be Dismissed

#### 1.  To Be Sufficient Machowicz's Pleading of Fraud Must Identify With Particularity What Vulnerabilities KSS Falsely Reported As Existing On Her Computer and Must Explain Why or How the KSS Reports Were False

In the Complaint, Machowicz asserts a cause of action for fraudulent inducement under Illinois common law. *See* Complaint at ¶¶ 64-72. To plead a claim for fraudulent inducement in Illinois, a plaintiff must allege "(1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance." *Sindles v. Saxon Mortgage Servs., Inc.*, Civ. No. 11- 7224, 2012 WL 1899401, at

* 3 (N.D. Ill. May 22, 2012) (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012)).

In addition, Fed. R. Civ. P. 9(b) requires that the plaintiff plead specific facts that identify the particular statements that are alleged to be false, and must also explain how or why those statements were false. *See, e.g., Veal v. First Am. Sav. & Loan*, 914 F.2d 909, 913 (7th Cir. 1990) (noting that a claim alleging fraud "must identify particular statements and actions and specify why they are fraudulent").

Machowicz's claims of fraud are based on the purportedly false vulnerability reports generated by KSS that allegedly fraudulently induced Machowicz to purchase Kaspersky software that she did not need. Thus, to withstand a motion to dismiss, Machowicz's claim of fraudulent inducement must identify specifically what vulnerabilities KSS reported as existing on her computer, and explain why it is that KSS's vulnerability reports were misleading or false.

## 2.     The Complaint Does Not Describe What Vulnerabilities KSS Reported Finding on Machowicz's Computer Or That These Are Not Vulnerabilities

As was previously stated, Machowicz's fraud claims are based solely on the KSS vulnerability reports. It is those reports that Machowicz alleges are misleading or false, and the purportedly false vulnerability reports are what allegedly caused the harm to Machowicz, *i.e.,* that induced Machowicz to pay for software she did not need.

The Complaint, however, does not contain an identification or description of the vulnerabilities or issues that KSS purportedly detected on Machowicz's computer. The Complaint states only that "after installing [KSS], Machowicz conducted a 'scan' of her computer" and "recalls that KSS reported that a number of 'problems [were] found' which were causing her computer to be 'at risk,'" Complaint at ¶ 41. There is no description in the Complaint of what those problems were or how many there were, nor does the Complaint allege

that any of the "other issues" described in Section II of the Complaint (which describes the KSS scan on the generic test computer) were reported by KSS as being present on Machowicz's computer. In fact, other than Machowicz's amorphous allegation that KSS reported finding "a number of problems," there is no allegation in the Complaint whatsoever that identifies the problems KSS allegedly reported finding on Machowicz's computer.

In short, Machowicz's fraud claim fails to allege one of the necessary elements of a fraud claim: a particular identification of a false statement of material fact. Her fraudulent inducement count should be dismissed for this reason alone.

      **3.**      **Even Assuming That the Vulnerabilities That KSS Reported Finding On Machowicz's Computer Were the Eleven "Other Issues" Described In Section II of the Complaint, the Complaint Does Not and Cannot Establish That the KSS Report On Machowicz's Computer Was False or Fraudulent**

To adequately plead fraud, not only must the Complaint identify the allegedly false statements made in the KSS vulnerability report on Machowicz's computer, it must also explain how or why those statements are false or fraudulent. The Complaint, however, fails in this regard as well.

The closest that the Complaint come to explaining why or how the KSS report on Machowicz's computer was false is in paragraph 44, which states that:

> Contrary to Kaspersky's representations, KSS did not actually conduct a credible assessment her computer. In reality, and as established in Section II above, Kaspersky merely returned false "problems" and misrepresented the actual condition of her computer – as it was designed to do.

Complaint, ¶ 44. That is to say, the Complaint attempts to link the results of the KSS scan of Machowicz's computer to the eleven "other issues" that KSS reported as security vulnerabilities on the generic test computer described in Section II of the Complaint.

11

Even if one were to assume (albeit without justification) that the KSS scan of Machowicz's computer reported finding all of the "other issues" described in Section II of the Complaint, such a report would not by itself be false or fraudulent. As the Complaint itself states, whether such a KSS is false depends on a number of factors, including what operating system the computer in question is running and whether the AutoRun option is switched on or off. *See* Complaint, ¶¶ 21-22. Certainly, according to the Complaint, a KSS report identifying AutoRun issues as a security risk would be completely accurate for computers running "older" versions of the Windows operating system. *Id*. And if any one of the vulnerabilities reported by the KSS scan is true, then the KSS scan report cannot be deemed to be false or fraudulent.

Thus, to adequately allege that a KSS report about Machowicz's computer that listed all eleven "other issues" described in Section II of the Complaint is misleading or fraudulent, the Complaint would have to include additional information. The Complaint would have to at a minimum identify what operating system Machowicz's computer was using, and allege that the operating system was one of the unspecified "newer" versions that the Complaint alleges can never have a legitimate AutoRun issue. As it stands, the Complaint leaves open the possibility that a KSS report finding that Machowicz's computer could be at risk due to the presence of an AutoRun issue is accurate and not false or misleading at all.

In short, the Complaint does not and cannot allege how or why the results of the KSS scan on Machowicz's computer were false or misleading. As such, Machowicz's allegations of fraudulently inducement are inadequately plead and must be dismissed.

**B.     Machowicz's Claims Under Both the Unfairness and Deception Prongs of the ICFA Should Also Be Dismissed For Failure to State a Claim Under Rules 12(b)(6) and 9(b)**

In addition to fraudulent inducement, the Complaint alleges that Kaspersky's design of

KSS also violated the ICFA, which prohibits methods of competition that involve (i) unfair acts

or practices, and (ii) deceptive acts or practices.  815 ILCS § 505/2.  As is explained in greater

detail below, the Complaint does not even approach satisfying either the "unfairness" or

"deception" prong under the ICFA.

> 1.      **Machowicz Cannot Maintain an ICFA Claim Under the Deception Prong Because She Failed to Allege How the Alleged Representations Were False Or Proximately Caused the Alleged Harm**

To state a claim for violation of the ICFA, "a plaintiff must establish: (1) a deceptive act

or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3)

the occurrence of the deception in the course of conduct involving trade or commerce, and (4)

actual damage to the plaintiff (5) proximately caused by the deception."  *Avery v. State Farm*

*Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005) (citing *Oliveira v. Amoco Oil Co.*, 776

N.E.2d 151, 160 (Ill. 2002)).

As was previously explained, the Complaint fails to specify what problems KSS reported

finding on Machowicz's computer.  All that the Complaint alleges is that Machowicz recalls

KSS reported detecting problems on her computer that caused her computer to be at risk.  There

is no explanation whatsoever of what those reported problems were, or how KSS's report that

Machowicz's computer was at risk was misleading, deceptive or fraudulent.  For this reason

alone, Plaintiff's claim that KSS's report was a fraudulent or deceptive act or practice under the

ICFA has been inadequately plead and should be dismissed.  *See, e.g., Greifenstein v. Estee*

*Lauder Corp., Inc.*, Civ. No. 12-09235, 2013 WL 3874073, at *4 (N.D. Ill. July 26, 2013)

(dismissing putative class action complaint alleging violations of the "deception" prong of the

ICFA for failure to adequately "plead with particularity *how* the wrinkle-repair claims she

identifies [were] false" as required by Fed. R. Civ. P. 9(b)) (emphasis in original).  *See also*

*Padilla v. Costco Wholesale Corp.*, Civ. No. 11- 7686, 2012 WL 2397012, at *4 (N.D. Ill. June

21, 2012) (granting motion to dismiss when plaintiff Padilla "fail[ed] to allege 'how' Costco's

product labels were fraudulent"); and *Global Total Office Ltd. P'ship v. Global Allies, LLC*, Civ.

No. 10-1896, 2011 WL 3205487, at *3 (N.D. Ill. July 28, 2011) (dismissing second amended

complaint when plaintiff, despite alleging facts indicating the 'what' of the alleged

misrepresentations, failed to allege "who made the alleged statements, how or by what means

were the alleged statements disseminated to consumers, and when the statements were made

beyond general averments of 'since 2001'").

In addition, the ICFA "deception" prong explicitly requires that Plaintiff plead proximate

cause, *i.e.*, that some fraudulent statement was the proximate cause of Machowicz's purchase of

unneeded Kaspersky software.  *See Avery*, 216 Ill. 2d at 200, 835 N.E.2d at 861 (stressing that

under the ICFA, "it is not possible for a plaintiff to establish proximate causation unless the

plaintiff can show that he or she was, in some manner, deceived by the misrepresentation")

(internal citations omitted).  Here, Plaintiff has failed to allege what fraudulent statement KSS

made to her in the first instance, much less that any statement by KSS was the proximate cause

of her alleged damages.  Therefore, Plaintiff's ICFA "deception" claim must also be dismissed

for failure to allege proximate cause.

> **2.     As a Matter of Law, Machowicz Cannot Maintain an ICFA Claim Under the Unfairness Prong Absent Allegations of Oppressiveness and Lack of Meaningful Choice**

In addition to the foregoing, the ICFA claim under the "unfairness" prong fails to allege

key elements needed to sustain that statutory claim.  A plaintiff must allege whether the "unfair"

practice complained of (1) offends public policy; (2) is immoral, unethical, oppressive, or

unscrupulous; and (3) causes substantial injury to consumers. *See, e.g., Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18, 775 N.E.2d 951, 961 (2002) (citing *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n. 5, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972)). "To be unfair under the Act, defendant's conduct must violate public policy, be so oppressive that the consumer has little alternative but to submit, and substantially injure the consumer." *Tudor v. Jewel Food Stores, Inc.*, 288 Ill. App. 3d 207, 210, 681 N.E.2d 6, 8 (1st Dist. 1997). A plaintiff must show a "type of oppressiveness and lack of meaningful choice." *Robinson*, 775 N.E.2d at 962; *see also Ciszewski v. Denny's Corp.*, Civ. No. 09- 5355, 2010 WL 2220584, at *2 (N.D. Ill. June 2, 2010).

For example, the court in *Tudor* affirmed the trial court's granting of a motion to dismiss, finding the defendant's conduct was not "unfair" because the plaintiff had "not adequately pleaded that she had no alternative but to pay the incorrectly scanned prices" and it further found there was "an absence of the oppressiveness and lack of meaningful choice" required by the ICFA because the "defendant issue[d] a receipt, enabling [plaintiff] to check whether she ha[d] been correctly charged, and offer[ed] a money-back guarantee if the scanned price differ[ed] from the shelf price." *Id.*

Here, Machowicz fails to allege that Kaspersky's conduct at issue: (1) violated public policy; (2) was unethical, oppressive or unscrupulous; or (3) caused substantial injury. *See Ciszewski*, 2010 WL 2220584, *2 ("A practice is unfair under the ICFA if it offends public policy; is immoral, unethical, oppressive or unscrupulous; or causes substantial injury.").

Furthermore, as in *Tudor*, Machowicz failed to allege that she "had no alternative but to pay" for KIS. Put differently, as in the Illinois Supreme Court case *Robinson*, "there [is] a total absence of the type of oppressiveness and lack of meaningful choice necessary to establish

unfairness" because Machowicz "could have gone elsewhere" to purchase software to optimize and protect her computer.[3] *Robinson*, 775 N.E.2d at 962.

## C.     Machowicz' Unjust Enrichment Claim Should Also Be Dismissed

Machowicz's third claim for unjust enrichment is equally flawed.  Specifically, Machowicz expressly coupled her unjust enrichment claim to her allegations of fraud: "Defendant has knowingly received and retained benefits from Plaintiff and the Class through its fraudulent scheme that would render it unjust to allow them to retain such benefits." Complaint at ¶ 74.

Under Illinois law, unjust enrichment as pleaded in the Complaint is not a separate cause of action. *See Pirelli*, 631 F.3d at 447 (quoting *Alliance Acceptance Co. v. Yale Ins. Agency, Inc.*, 271 Ill. App. 3d 483, 208 Ill. Dec. 49, 648 N.E.2d 971, 977 (1st Dist. 1995)). "[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Association Ben. Services, Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) (citing *Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436 (7th Cir. 1996)).

Accordingly, because the unjust enrichment claim is based solely on the Complaint's allegation of fraud, it is not a separate stand alone claim and should be dismissed for the same reasons set forth above in connection with the Plaintiff's claims for fraudulent inducement and violation of the "deception" prong of the ICFA.  *See Martis, D.C. v. Grinnell Mutual Reins. Co.*,

---

[3] Alternatively, Machowicz could have simply downloaded a free trial-version of KIS in lieu of purchasing the paid version. Before purchasing KIS, Machowicz had the option to download the free trial version of the product to review it and confirm it would protect her computer (which it would have done).

388 Ill. App. 3d 1017, 1024, 905 N.E.2d 920, 928 (3d Dist. 2009) (affirming dismissal of unjust enrichment claim after dismissal of the underlying consumer fraud claim).

<u>**CONCLUSION**</u>

For the reasons set forth above, Kaspersky respectfully requests that Plaintiff's Complaint be dismissed in its entirety for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and 9(b).

Dated:  April 18, 2014                            Respectfully submitted by:

                                                                  /s/ Lisa M. Lilly

Lisa M. Lilly (ARDC No. 6272614)
LISA M. LILLY, LLC
lml@lisamlillylaw.com
20 S. Clark Street, Suite 410
Chicago, IL 60603
312.781.2100

David Wynn
david.wynn@arentfox.com
Eric Roman
eric.roman@arentfox.com
ARENT FOX LLP
1675 Broadway
New York, NY 10019
(212) 484.3900
(212) 484.3990

*Attorneys For Defendant Kaspersky Lab, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

_____
/s/ Lisa M. Lilly