# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BARBARA MACHOWICZ, individually and on behalf of all others similarly situated | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:14-cv-1394 |
| v. | ) ) | Hon. James F. Holderman |
| KASPERSKY LAB, INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF KASPERSKY LAB INC.'S MOTION TO STRIKE THE CLASS ACTION ALLEGATIONS OR IN THE ALTERNATIVE TO LIMIT THE SCOPE OF THE PUTATIVE CLASS

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................... 1

II.  FACTUAL BACKGROUND ...................................................................................... 1

III.  APPLICABLE LAW ................................................................................................. 3

IV.  ARGUMENT ............................................................................................................ 4

A.  Machowicz's Complaint Does Not Meet the Statutory Requirements For Class Certification Because Common Issues of Facts Do Not Predominate In This Action ........................................................................................................ 4

    1.  To Identify the Fraudulent Statements That Form the Basis For the ICFA and Fraudulent Inducement Claims Will Involve an Individualized Fact Investigation That Is Not Susceptible to Class Treatment ............................................................................................. 5

    2.  Likewise, the Issues of Deception and Proximate Cause Are Individualized Questions That Are Not Susceptible to Class Treatment ............................................................................................. 7

    3.  Class Allegations Relating to Plaintiff's Unjust Enrichment Claim Should Likewise Be Stricken ........................................................... 9

B.  The Plaintiff's Claims Cannot Proceed As a Nationwide Class Action ............... 9

    1.  Variations In Consumer Protection Laws From State to State Preclude Certification Of a Nationwide Class For Plaintiff's Consumer Protection Claim ................................................................. 10

    2.  Similarly, Significant Variations In State Fraud Laws Preclude Certification Of a Nationwide Class For Plaintiff's Fraudulent Inducement Claim ...................................................................................... 12

    3.  Variations In the Law of Unjust Enrichment Likewise Preclude Certification Of a Nationwide Class .................................................... 14

V.  CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Association Ben. Services, Inc. v. Caremark RX, Inc.*,
    493 F.3d 841 (7th Cir. 2007) .................................................9

*Athey Products Corp. v. Harris Bank Roselle*,
    89 F.3d 430 (7th Cir. 1996) .................................................9

*Bentley v. Legent Corp.*,
    849 F. Supp. 429 (E.D. Va. 1994) .................................................14

*Bodtke v. Stryker Corp.*,
    Civ. No. 10-1148, 2011 WL 223013 (E.D. Ark. Jan. 24, 2011) ...........................................14

*Chase Bank USA N.A. v. Hess*,
    Civ. No. 08-121, 2011 WL 45132 (D. Del. Jan. 6, 2011)....................................11

*Clay v. American Tobacco Co.*,
    188 F.R.D. 483 (S.D.Ill.1999) .................................................14

*Dual-Temp of Illinois, Inc. v. Hench Control Corp.*,
    Civ. No. 09-595, 2011 WL 1642513 (N.D. Ill. May 2, 2011) .................................13

*Equity Builders and Contractors, Inc. v. Russell*,
    406 F. Supp. 2d 882 (N.D. Ill. 2005) .................................................12

*General Tel. Co. of Southwest v. Falcon*,
    457 U.S. 147 (1982).................................................4

*Griffin v. GK Intelligent Systems, Inc.*,
    87 F. Supp. 2d 684 (S.D. Tex. 1999) .................................................13

*Hunt v. Enzo Biochem, Inc.*,
    530 F. Supp. 2d 580 (S.D. N.Y. 2008).................................................13

*In re Clear Advantage Title, Inc.*,
    438 B.R. 58 (Bankr. D.N.J. 2010) .................................................12

*In re Grand Theft Auto Video Game Consumer Litig.*,
    251 F.R.D. 139 (S.D.N.Y.2008) .................................................15

*In re Sears, Roebuck & Co. Tools Marketing & Sales Prac. Litig.*,
    Civ. Nos. 05-4742 & 05-2623, 2006 WL 3754823 (N.D. Ill. Dec. 18, 2006)........................15

*Joe Hand Promotions, Inc. v. Mills*,

# TABLE OF AUTHORITIES
(continued)

Page(s)

567 F. Supp. 2d 719 (D.N.J. 2008) ........................................................................13

*Kawasaki Motors Finance Corp. v. J.P. Morgan Chase Bank, N.A.*,
Civ. No. 10-1154, 2011 WL 1212217 (D. Ariz. Mar. 30, 2011) ...........................13

*Klay v. Humana*,
382 F.3d 1241 (11th Cir. 2004) ............................................................................14

*Oshana v. Coca-Cola Bottling Co.*,
225 F.R.D. 575 (N.D. Ill. 2005 ..........................................................................7, 8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) .................................................................................9

*Read v. Teton Springs Golf & Casting Club, LLC*,
Civ. No. 08-99, 2011 WL 1224073 (D. Idaho Feb. 16, 2011) ...............................14

*Retired Chicago Police Ass'n v. City of Chicago*,
7 F.3d 584 (7th Cir. 1993) ...................................................................................4

*Schorsch v. Hewlett-Packard Co.*,
417 F.3d 748 (7th Cir. 2005) ...............................................................................10

*Sindles v. Saxon Mortgage Servs., Inc.*,
Civ. No. 11-7224, 2012 WL 1899401 (N.D. Ill. May 22, 2012) ............................5

*Spirit Locker, Inc. v. EVO Direct, LLC*,
696 F. Supp. 2d 296 (E.D.N.Y. 2010) .................................................................12

*Thompson v. Jiffy Lube Intern., Inc.*,
250 F.R.D. 607 (D. Kan. 2008).............................................................................14

*Vulcan Golf, LLC v. Google Inc.*,
254 F.R.D. 521 (N.D. Ill. 2008).............................................................................15

*White v. Wachovia Bank, N.A.*,
563 F.Supp.2d 1358 (N.D. Ga. 2008) ...................................................................15

*Wigod v. Wells Fargo Bank, N.A.*,
673 F.3d 547 (7th Cir. 2012) .................................................................................5

*Wright v. Family Dollar, Inc.*,
Civ. No. 10-4410, 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010) ...........................4

OTHER CASES

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Alliance Acceptance Co. v. Yale Ins. Agency, Inc.*,
 271 Ill. App. 3d 483, 208 Ill. Dec. 49, 648 N.E.2d 971 (1st Dist. 1995)...................................9

*Cheshire Mortgage Serv., Inc., v. Montes*,
 612 A.2d 1130 (Conn. 1992) ...................11

*DCB Const. Co., Inc. v. Cent. City Dev. Co.*,
 965 P.2d 115 (Co. 1998) ...................15

*Exxon Corp. v. Emerald Oil & Gas Co., L.C.*,
 54 Tex. Sup. Ct. J. 761 (2011) ...................12

*Halper v. Jewish Family & Children's Service of Greater Philadelphia*,
 963 A.2d 1282 (Pa. 2009) ...................13

*Henry Schein, Inc. v. Stromboe*,
 102 S.W.3d 675 (Tex. 2002)...................10

*Luedeman v. Tri-West Constr. Co.*,
 592 P.2d 281 (Or. App. 1979)...................10

*Maloof v. John Hancock Life Ins. Co.*,
 60 So. 3d 263, 277 (Ala. 2010)...................12

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*,
 578 N.W.2d 222 (Iowa 1998) ...................11

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs Grp, Inc.*,
 171 Cal. App. 4th 35, 89 Cal. Rptr. 3d 473 (1st Dist. 2009) ...................13

*Oberlin Capital, L.P. v. Slavin*,
 147 N.C. App. 52, 554 S.E.2d 840 (2001)...................13

*Oliveira v. Amoco Oil Co.*,
 776 N.E.2d 151 (Ill. 2002)...................5

*Osterhaus v. Schunk*,
 249 P.3d 888 (Kan. 2011) ...................12

*S&R Associates, L.P., III v. Shell Oil Co.*,
 725 A.2d 431 (Del. Sup. Ct. 1998) ...................10

*Schock v. Nash*,
 732 A.2d 217 (Del.1999) ...................15

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Schwaiger v. Mitchell Radiology Associates, P.C.*,
  652 N.W.2d 372 (S.D. 2002) ...................................................................................................12

*Sohaey v. VanCura*,
  240 Ill. App. 3d 266, 607 N.E.2d 253 (2d Dist. 1992 ...........................................................10

*South County, Inc. v. First Western Loan Co.*,
  315 Ark. 722, 871 S.W.2d 325 (1994) ...................................................................................14

*Waggoner v. Williamson*,
  Civ. No. 8 So.3d 147 (Miss. 2009) ........................................................................................13

*Weinberg v. Sun Co.*,
  777 A.2d 442 (Pa. 2001) .........................................................................................................10

**OTHER STATUTES**

Idaho Code § 48-603 ...................................................................................................................10

Iowa Code § 714.16(2)(a) ...........................................................................................................11

Miss. Code Ann.§ 75-24-15(4)) ..................................................................................................11

Mont. Code Ann.§ 30-14- 133(1)) ..............................................................................................11

Ohio Rev. Code Ann. § 1345.09(B)) ..........................................................................................11

Okla. Stat. Ann. Title 78, § 53 ...................................................................................................11

Or. Rev. Stat.§ 646.638(1) ..........................................................................................................10

**RULES**

Fed. R. Civ. P. 23 ......................................................................................................................3, 4

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 552 ..........................................................................................13

## I.  INTRODUCTION

Defendant Kaspersky Lab, Inc. ("Kaspersky") respectfully moves for an order striking the class allegations made by Plaintiff Barbara Machowicz on behalf of herself and others that are similarly situated ("Plaintiff" or "Machowicz").  Alternatively, Kaspersky requests that the scope of the putative class be limited solely to consumers that were purportedly injured in Illinois.  The Complaint on its face demonstrates that this case is unsuitable for any class action treatment, much less nationwide class treatment as a matter of law.[1]

## II.  FACTUAL BACKGROUND

Kaspersky develops and sells anti-virus and other software that is designed to protect the user against malicious attack.[2]  Complaint, ¶¶ 8-9.  Among the software products it sells are the Kaspersky Pure ("Pure"), Kaspersky Internet Security ("KIS"), and Kaspersky Anti-Virus ("KAV") packages, which generally range in price between $40.00 and $60.00.  *Id*., ¶ 9.

In addition to its "for sale" products, Kaspersky offers a free Internet software download called Kaspersky Security Scan ("KSS").  *Id*., ¶ 10.  KSS is designed to (i) scan a user's computer for known malware and security vulnerabilities (such as computer viruses and other malicious software), and (ii) to advise the user as to his or her computer's security status.  *Id*., ¶ 11 and Fig. 2.  The free KSS software does not purport to correct any of the security vulnerabilities it detects.  *Id*.  To fix any of those vulnerabilities, a user may purchase a security

---

[1] In this motion, Kaspersky focuses on the *prima facie* failure of Plaintiff's Complaint to meet particular class action requirements (*e.g.*, the predominance of common facts and applicable law).  By making this motion, Kaspersky in no way concedes that Plaintiff has established or met any of the other class action requirements.  If this pleading motion is not granted, and Plaintiff is allowed to proceed with a full-scale motion for class certification, Kaspersky will formally challenge Plaintiff's showing as to all the statutory class action elements.  This motion, however, addresses only the legal deficiency of Plaintiff's class action allegations on the face of her Complaint.

[2] For a more complete factual discussion the Court should refer to Kaspersky's memorandum of law in support of its Motion to Dismiss the Complaint, which was filed contemporaneously with this motion to strike.  Only the operative facts relating to the class are set forth in this memorandum.

software package, either from Kaspersky or from another company. *Id*., 11-12 and Fig. 2.

Plaintiff alleges that on or around September 2013, she was "browsing the Internet for software to optimize and protect her computer" when she read an advertisement for KSS that was "substantially similar" to the ones depicted in Figs. 1 and 2 of the Complaint. Complaint, ¶ 38. Afterwards, Machowicz allegedly downloaded KSS. *Id*., ¶ 40.

Machowicz claims she used KSS to scan her computer, and that "KSS reported that a number of 'problems [were] found' which were causing her computer to be 'at risk.'" *Id*., ¶ 41. Although the Complaint never specifies exactly what "problems" were reported as existing on Machowicz's computer, Section II of the Complaint describes eleven specific "other issues" that, if detected, are reported by KSS as being vulnerabilities that <u>could</u> put a user's computer at risk. *Id*., ¶¶ 10-34. The Complaint groups these eleven "other issues" into three categories: Windows Explorer issues, Internet Explorer issues, and AutoRun issues. *Id*., ¶ 19. It is alleged that each of the Windows Explorer and Internet Explorer "issues" are merely default settings of the Microsoft Windows operating system, and that their existence on a computer does not put a computer at risk. *Id.* As for the AutoRun issues, these too are alleged to be default Windows settings that may be problematic on "older" versions of Windows, but not on "newer" Windows versions. *Id*., ¶¶ 20-22.

Allegedly relying on the accuracy of KSS's report, Machowicz clicked on a button displayed by KSS that prompted her to "CLICK FOR A SOLUTION," on which she was directed to a Kaspersky website displaying the message that "[KSS] found a potential vulnerability that could put your PC at risk. Kaspersky products provide recommendations on how to fix these issues. PURCHASE A SECURITY SOLUTION NOW." *Id.*, ¶ 42. Machowicz alleges she purchased a KIS software package for approximately $54.95 "in an effort

to repair the problems detected by KSS." *Id.*, ¶ 43. Machowicz claims to have been tricked into purchasing KIS because "[c]ontrary to Kaspersky's representations, KSS . . . merely returned false 'problems' and misrepresented the actual condition of her computer . . ." *Id*., ¶ 44.

Based on the allegations outlined above, Machowicz, on behalf of herself and the class, asserts claims for (i) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), (ii) common law fraudulent inducement, and (iii) unjust enrichment under Illinois law. The claims either directly allege fraud or sound in fraud. The unjust enrichment claim is based solely on the Plaintiff's allegations of fraud, and does not constitute a separate stand alone claim. Machowicz seeks to certify a nationwide class under each of her asserted claims. Complaint, ¶ 47.

### III.  APPLICABLE LAW

Rules 23(a) and (b) of the Federal Rules of Civil Procedure sets forth the rules under which a plaintiff may maintain a class action. Rule 23(a) states that a plaintiff may sue as a class representative only if (1) the class is so numerous that joinder of all members is impracticable; (2)  there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a).

In addition, Rule 23(b) states that a class action may be maintained if Rule 23(a) is satisfied, and if the action falls within one or more of Rule 23(b)'s prescribed categories of class actions, namely (1) actions where separate actions would adversely affect the class; (2) actions for injunctive or declaratory relief; (3) actions where common questions predominate over individual questions; and/or (4) hybrid class actions. *See* Fed. R. Civ. P. 23(b).

To certify a class action, the plaintiff must establish and meet all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *See, e.g., Retired Chicago Police*

*Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

Where a class action complaint does not meet these statutory certification requirements, the class action allegations should be dismissed or stricken at the pleading stage. *See Wright v. Family Dollar, Inc*., Civ. No. 10-4410, 2010 WL 4962838, at *1-2 (N.D. Ill. Nov. 30, 2010) (noting "[d]istrict courts both within this district and others, have held that a motion to strike class allegations . . . is an appropriate device to determine whether the case will proceed as a class action," and striking class action allegations where plaintiff could establish neither adequacy of representation nor typicality)(citations omitted). *See also General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim").

## IV.  ARGUMENT

### A.  Machowicz's Complaint Does Not Meet the Statutory Requirements For Class Certification Because Common Issues of Facts Do Not Predominate In This Action

The Plaintiff has alleged claims under the ICFA and for common law fraudulent inducement.  Both these claims are predicated on the same allegations of fraud: that Kaspersky intentionally designed KSS to issue reports that fraudulently warn the user that certain default settings in Windows are security vulnerabilities that could put a user's computer at risk.  It is maintained that Kaspersky designed KSS to make fraudulent statements in an effort to trick consumers into buying Kaspersky security software products.

To prove a violation of the ICFA, a plaintiff must allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut.*

*Auto. Ins. Co.*, 216 Ill. 2d 100, 180, 835 N.E.2d 801, 850 (2005) (citing *Oliveira v. Amoco Oil*

*Co.*, 201 Ill. 2d 134, 139, 776 N.E.2d 151, 160 (2002)).

Likewise, to establish fraudulent inducement under Illinois law, a plaintiff must establish

"(1) [a] false statement of material fact (2) known or believed to be false by the party making it;

(3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of

the statement; and (5) damage to the other party resulting from that reliance." *Sindles v. Saxon*

*Mortgage Servs., Inc.*, Civ. No. 11-7224, 2012 WL 1899401, at *3 (N.D. Ill. May 22, 2012)

(citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012)).

Thus, to succeed on her ICFA and fraudulent inducement claims, each putative class

member must establish that fraudulent statements were made by the KSS software and that those

fraudulent statements induced each class member to purchase Kaspersky software that he or she

did not need. Proving these elements will necessarily involve highly individualized questions of

fact that make this case inappropriate for class treatment.[3]

**1.**      **To Identify the Fraudulent Statements That Form the Basis For the ICFA and Fraudulent Inducement Claims Will Involve an Individualized Fact Investigation That Is Not Susceptible to Class Treatment**

At the outset, identifying which fraudulent statements were made to each class member

creates individualized questions of fact that predominate over any common ones. This is

because not every report that is made by the KSS software is fraudulent. *See, e.g.*, Complaint, ¶

21. In fact, the KSS scan report is alleged to be fraudulent only when it reports the presence of

AutoRun settings, Windows Explorer settings or Internet Explorer settings as vulnerabilities that

could place a user's computer at risk. *Id.*, ¶¶ 17-19, 22, and 24.

According to the Complaint, the presence of the identified Windows Explorer settings

---

[3] As noted in the companion motion to dismiss, the Complaint does not even allege that Plaintiff Machowicz meets this test.

and Internet Explorer settings can never create a security vulnerability. *Id.*, ¶ 24. The Complaint, however, openly admits that AutoRun settings <u>can</u> create vulnerabilities in computers running "older" Windows operating systems, without specifying what versions of Windows it is describing as "older." *Id.*, ¶¶ 20-22. It is only on computers with "newer" Windows operating systems that KSS' report of an AutoRun vulnerability could be fraudulent. *Id.* Thus, the fraud claims alleged cannot meet the required commonality standard because establishing whether a fraudulent statement was made to begin with depends on the particular setup and other unique aspects of each class member's computer.

In addition, to establish that KSS defrauded any particular class member, each individual class member will have to establish that the KSS scan reported that one of the eleven Windows Explorer, Internet Explorer, or AutoRun issues described in Section II of the Complaint[4] was present on his or her individual computer and that as a result his or her computer "could" be at risk. With respect to AutoRun, the class members must also establish that his or her computer was running a "newer" Windows operating system on which AutoRun allegedly never creates a security vulnerability. As noted in the dismissal motion, even with respect to Machowicz the Complaint fails to identify sufficient detail as to the alleged fraudulent or deceitful conduct, and relies only on generic allegations of misconduct by KSS and Kaspersky. *See* Motion to Dismiss, § 5.A.2.

---

[4] It is clear from ¶¶ 14, 18, and Fig. 4 of the Complaint that the Internet Explorer, Windows Explorer, and AutoRun issues described in Section II fall into a broader category of so-called "other issues" that KSS is designed to report. In addition to "other issues," KSS reports on the presence of issues relating to "computer protection," "malware," and "vulnerabilities," none of which are claimed to be fraudulent in the Complaint. Thus, the class members must each establish that KSS reported the presence of one of the Internet Explorer, Windows Explorer, or AutoRun issues described in Section II.

Given all the individualized facts that need to be established before a fraudulent

statement can even be identified, common facts do not predominate as required to support class

treatment.

**2.** **Likewise, the Issues of Deception and Proximate Cause Are Individualized Questions That Are Not Susceptible to Class Treatment**

In addition to establishing the existence of fraudulent statements or conduct purportedly

made by KSS, each class member needs to establish facts that prove that he or she was deceived

into purchasing an unneeded Kaspersky product, and that the proximate cause of the deception

was a fraudulent KSS statement. This assumes, of course, that KSS did not report finding actual

vulnerabilities that either could or did place the user's computer at risk creating a need for a full

security package such as KIS, KAV or Pure. It will therefore be necessary to conduct an inquiry

into each individual putative class member's computer to determine the proximate cause of each

purchase decision. As fact questions relating to proximate cause require an individualized,

member-specific inquiry, class treatment is precluded.

With regards to the ICFA, this District has explicitly held that the proximate cause

element necessarily creates predominating individualized issues that preclude class certification.

*Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 586 (N.D. Ill. 2005), aff'd, 472 F.3d 506

(7th Cir. 2006), cert. denied, 551 U.S. 1115 (2007). In *Oshana*, the plaintiff claimed Coca-Cola

employed a deceptive marketing scheme to conceal and mislead customers into believing

fountain Diet Coke contained no saccharin. *Id.*, at 578. The court, noting that causation is an

"inherent part of the liability equation" for an ICFA claim, held that to prove the defendant

violated the ICFA, plaintiffs must show that the deceptive act or misrepresentation proximately

caused each class member's injury, which requires a "massive fact-specific inquiry" that

precludes class treatment. *Id.* at 586 More particularly, the Court stated:

> To establish proximate causation, each individual must provide
> evidence of his or her knowledge of the deceptive acts and
> purported misstatements . . . [which] requires an individual
> analysis of the extent to which Coca-Cola's marketing played a
> role in each class member's decision to purchase fountain diet
> Coke . . . . Each potential class member likely had varying degrees
> of knowledge . . . regarding fountain diet Coke's contents due to
> varying exposure to various representations. These highly
> individualized factual determinations preclude certification.

*Id.*

*Oshana* is equally applicable in the present case. To establish that Kaspersky is liable under the ICFA and Illinois common law, each class member will need to show that he or she actually had a computer without vulnerabilities, read the allegedly false KSS vulnerability reports, and that the allegedly false report was the proximate event leading to the purchase, *i.e.*, that induced the class member to purchase an unneeded Kaspersky software package. As in *Oshana*, this analysis will require a massive, individualized fact-specific inquiry.

Here the alleged fraudulent statement was a purportedly false KSS report stating that the user's computer could be at risk from the presence of a Internet Explorer, Windows Explorer, or AutoRun issue on his or her machine. But even the Complaint tacitly admits that such a report would not induce every consumer to purchase a piece of Kaspersky software. Rather, it is only the so-called "average consumers," those who lacked sufficient technical knowledge to understand the KSS report, who were purportedly deceived. *See, e.g.*, Complaint, ¶¶ 3 and 35. As a result, a further individualized inquiry needs to be made into the level of each class member's technical sophistication to determine whether the KSS report actually deceived the class member into making an unneeded purchase.

Finally, separate individualized inquiries need to delve into how much risk an individual putative class member would find palatable. After all, the purportedly fraudulent KSS reports did not warn the user that her computer was at risk, but only that it <u>could</u> be at risk. This

qualified warning leaves it to the individual consumer to choose its subjective risk tolerance, and requires an inquiry into whether KSS's warning of a potential risk was sufficient to be the actual proximate cause of the consumer's purchase.

### 3. Class Allegations Relating to Plaintiff's Unjust Enrichment Claim Should Likewise Be Stricken

As noted in the companion dismissal motion, unjust enrichment is not a separate cause of action in the circumstances of this case. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011) (quoting *Alliance Acceptance Co. v. Yale Ins. Agency, Inc.*, 271 Ill. App. 3d 483, 648 N.E.2d 971, 977 (1st Dist. 1995)). Where a claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, "resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well." *Association Ben. Services, Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) (citing *Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436 (7th Cir. 1996)).

Here, the Plaintiff expressly couples her unjust enrichment claim to her allegations of fraud. *See* Complaint at ¶ 74 ("Defendant has knowingly received and retained benefits from Plaintiff and the Class through its fraudulent scheme that would render it unjust to allow them to retain such benefits."). Accordingly, the Plaintiff's unjust enrichment claim is not a separate stand-alone claim, and the class allegations relating to it should be stricken because they require a predominantly individualized factual analysis that is unsuitable for class treatment.

### B. The Plaintiff's Claims Cannot Proceed As a Nationwide Class Action

Courts will limit a class definition wherever necessary to ensure that the class is fairly and precisely constituted. *See, e.g., Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005) ("litigants and judges regularly modify class definitions"). In this case, the Plaintiff is

alleging that the putative class is nationwide.  Complaint, ¶ 47.  The Plaintiff's ICFA and fraudulent inducement claims, however, cannot be adjudicated on a nationwide basis, because materially different state consumer protection laws apply.  Non-Illinois residents should neither have the benefits nor the burdens of either the ICFA or of Illinois' law governing fraud.

1. **Variations In Consumer Protection Laws From State to State Preclude Certification Of a Nationwide Class For Plaintiff's Consumer Protection Claim**

Consumer protection statutes vary substantially from state to state and those facts independently mitigate against a nationwide class.  To that point, a number of states require that a consumer show actual or reasonable reliance on the purported misrepresentation.  *See, e.g., Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693-94 (Tex. 2002) (citing V.T.C.A, Bus. & C.§ 17.41 et seq.); *Weinberg v. Sun Co.*, 777 A.2d 442, 445-46 (Pa. 2001).  By contrast, in other states actual reliance is not an element of a consumer fraud act claim.  *See, e.g., S&R Associates, L.P., III v. Shell Oil Co.,* 725 A.2d 431, 440 (Del. Sup. Ct. 1998).

Foreign putative class members do not necessarily have injury under Illinois law.  For example, under the ICFA, a defendant is liable only if he knows that a representation is false or if the defendant could have discovered the falsity through the exercise of ordinary care.  *See Sohaey v. VanCura*, 240 Ill. App. 3d 266, 291, 607 N.E.2d 253, 272 (2d Dist. 1992), aff'd, 158 Ill. 2d 375, 634 N.E.2d 707 (1994); *see also* Idaho Code § 48-603.  By contrast Oregon specifically requires allegations and proof of willful conduct to establish a claim under its Unlawful Trade Practices Act.  *See* Or. Rev. Stat.§ 646.638(1); *Luedeman v. Tri-West Constr. Co.*, 592 P.2d 281, 282 (Or. App. 1979).  Similarly, in Connecticut the statute does not require constructive or actual knowledge that the representation was false or that the deception was intentional.  *Cheshire Mortgage Serv., Inc., v. Montes*, 612 A.2d 1130, 1144 (Conn. 1992).

Moreover, state consumer fraud statutes differ as to who may even be a plaintif and

permitted to assert a claim. Many states expressly prohibit individual consumers from serving as a private attorney general. At the same time, other states limit standing to competitors or there must be a business-to-consumer relationship at issue.[5] Oklahoma's consumer protection statute limits standing only to "competitors." *See* Oklahoma Deceptive Trade Practices Act, Okla. Stat. Ann. Tit. 78, §53. Other states, such as Iowa, Montana, Mississippi, and Ohio do not permit individual consumers to bring an action under their respective statutes. *See, e.g., Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 228 (Iowa 1998) (finding no private right of action under Iowa consumer statute, Iowa Code § 714.16(2)(a), because "when state legislatures want consumers to enforce their consumer fraud acts, they expressly provide for that remedy in the statute. Iowa has not done that."). *See* also Montana Unfair Trade Practices and Consumer Protection Act (Mont. Code Ann.§ 30-14- 133(1)); Mississippi Consumer Protection Act (Miss. Code Ann.§ 75-24-15(4)) ("Nothing in [the Act] shall be construed to permit any class action or suit ...."); Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. § 1345.09(B)).

As for the states that do permit consumers to bring actions under their protection statutes, those states differ as to who qualifies as a consumer for purposes of a consumer fraud claim. For example, Delaware courts have held that the plaintiff need not be a consumer to bring a consumer fraud claim, whereas New York looks to protect consumers under its consumer fraud statute. *See, e.g.*, *Chase Bank USA N.A. v. Hess*, Civ. No. 08-121, 2011 WL 45132, at *11 (D. Del. Jan. 6, 2011) ("Although the statute does not define 'victim,'" its express purpose is to protect not only consumers, but also 'legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within this state'") (citation omitted); *Spirit Locker, Inc. v. EVO Direct, LLC*, 696 F. Supp. 2d 296, 301 (E.D.N.Y. 2010) (holding that NY's consumer fraud statute is "not a sword to be wielded in

---

[5] There is no articulation that the class as defined is limited to consumers.

business-versus-business disputes . . . where the party asserting the claim is not acting in a consumer role."). New Jersey has yet another standard for determining whether a plaintiff is a consumer that may bring a claim under its consumer fraud act. *See, e.g., In re Clear Advantage Title, Inc*., 438 B.R. 58, 67-68 (Bankr. D.N.J. 2010) (a consumer is "one who uses (economic) goods, and so diminishes or destroys their utilities," and plaintiffs that do not meet this definition cannot bring a CFA claim) (citations omitted).

In short, the patch quilt of consumer protection laws make the ICFA claim wholly inappropriate for a nationwide class action. At best, any putative class action under the ICFA should be limited to citizens of Illinois.

**2.      Similarly, Significant Variations In State Fraud Laws Preclude Certification Of a Nationwide Class For Plaintiff's Fraudulent Inducement Claim**

The same analysis cuts against a nationwide class for Plaintiff's fraudulent inducement claim because the elements of fraud also vary materially from state to state. For example, Illinois law requires that the plaintiff's reliance on the misrepresentation must be "justifiable," as does the law in Arizona, Kansas, South Dakota and Texas. *See, e.g., Equity Builders and Contractors, Inc. v. Russell*, 406 F. Supp. 2d 882, 889 (N.D. Ill. 2005); *Osterhaus v. Schunk*, 249 P.3d 888, 899 (Kan. 2011); *Schwaiger v. Mitchell Radiology Associates, P.C*., 652 N.W.2d 372 (S.D. 2002); *Exxon Corp. v. Emerald Oil & Gas Co., L.C*., 54 Tex. Sup. Ct. J. 761 (2011). On the other hand, New York, New Jersey and Alabama, among others, require instead that reliance on the misrepresentation be "reasonable." *See, e.g., Maloof v. John Hancock Life Ins. Co*., 60 So. 3d 263, 277 (Ala. 2010) (fraud claims require some evidence of reasonable reliance, that is, that plaintiffs reasonably relied upon the alleged false representations, or that they reasonably relied on the state of affairs as it appeared in the absence of the suppressed information); *Joe Hand Promotions, Inc. v. Mills,* 567 F. Supp. 2d 719, 727-728 (D.N.J. 2008) (applying New

Jersey law); *Hunt v. Enzo Biochem, Inc.*, 530 F. Supp. 2d 580, 599 (S.D. N.Y. 2008) (applying

New York law).

State common law fraud claims also differ markedly as to scienter. For example, some

jurisdictions, such as Illinois, Arizona, California, Mississippi, Pennsylvania, Texas, and North

Carolina permit recovery for negligent misrepresentation under certain circumstances. *See, e.g.,*

*Dual-Temp of Illinois, Inc. v. Hench Control Corp.*, Civ. No. 09-595, 2011 WL 1642513, at *6

(N.D. Ill. May 2, 2011) (applying Illinois law; a claim for negligent misrepresentation is a

recognized exception to the economic loss doctrine, but the exception applies only when the

defendant is in the business of supplying information for the guidance of others); *Kawasaki*

*Motors Finance Corp. v. J.P. Morgan Chase Bank, N.A.*, Civ. No. 10-1154, 2011 WL 1212217,

at * 4 (D. Ariz. Mar. 30, 2011) (applying Arizona law; Arizona follows § 552 of the Restatement

(Second) of Torts, which imposes a duty for negligent misrepresentation purposes only on one

who, in the course of his business supplies false information for the guidance of others in their

business transactions); *National Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated*

*Services Group, Inc.*, 171 Cal. App. 4th 35, 89 Cal. Rptr. 3d 473 (1st Dist. 2009); *Waggoner v.*

*Williamson*, Civ. No. 8 So.3d 147 (Miss. 2009); *Halper v. Jewish Family & Children's Service*

*of Greater Philadelphia*, 963 A.2d 1282 (Pa. 2009); *Griffin v. GK Intelligent Systems, Inc.*, 87 F.

Supp. 2d 684 (S.D. Tex. 1999) (applying Texas law). *See also, e.g., Oberlin Capital, L.P. v.*

*Slavin*, 147 N.C. App. 52, 554 S.E.2d 840 (2001) (the tort of negligent misrepresentation occurs

when a party justifiably relies to his or her detriment on information prepared without reasonable

care by one who owed the relying party a duty of care). Other states, such as Virginia, Arkansas

and Idaho, do not permit recovery for negligent misrepresentation. *Bentley v. Legent Corp.*, 849

F. Supp. 429, 434 (E.D. Va. 1994), aff'd, 50 F.3d 6 (4th Cir. 1995); *Bodtke v. Stryker Corp.*, Civ.

No. 10-1148, 2011 WL 223013, at *3 (E.D. Ark. Jan. 24, 2011) ("The Arkansas Supreme Court does not recognize the tort of negligent misrepresentation"); *Read v. Teton Springs Golf & Casting Club*, *LLC,* Civ. No. 08-99, 2011 WL 1224073, at *10 (D. Idaho Feb. 16, 2011), report and recommendation adopted, 2011 WL 1223426 (D. Idaho 2011) (applying Idaho law); *South County, Inc. v. First Western Loan Co*., 315 Ark. 722, 871 S.W.2d 325 (1994).

Given these material variations in state law governing fraud, a nationwide class should not be certified.[6] Case-by-case determinations predominate and preclude class treatment.

### 3. Variations In the Law of Unjust Enrichment Likewise Preclude Certification Of a Nationwide Class

Courts considering unjust enrichment claims in the context of a nationwide class action have frequently found a lack of predominance due to conflicts in legal standards from state to state. *See, e.g., Thompson v. Jiffy Lube Intern., Inc.,* 250 F.R.D. 607, 626 (D. Kan. 2008); *Clay v. American Tobacco Co.,* 188 F.R.D. 483, 500–01 (S.D.Ill. 1999). In contrast to the legal issues underlying breach of contract claims, which exhibit substantial uniformity from state to state, unjust enrichment claims do not. "[T]he obligation underlying a breach of contract claim comes most immediately from a voluntary agreement, whereas the obligation underlying an unjust enrichment claim comes directly from state law (equity)." *Klay v. Humana,* 382 F.3d 1241, 1267 (11th Cir. 2004).

Some states require proof of an actual loss or impoverishment, while others do not. *See In re Grand Theft Auto Video Game Consumer Litig.,* 251 F.R.D. 139, 147–48 (S.D.N.Y.2008). Some states allow an unjust enrichment claim only in the absence of a contract. *See White v. Wachovia Bank, N.A.,* 563 F.Supp.2d 1358, 1371 (N.D. Ga. 2008) (discussing Georgia law).

---

[6] It is obvious that Plaintiff's counsel, in conformance with its business model, has cherry picked a plaintiff and, using broad strokes and generic allegations, is trying to engineer a nationwide class action in the face of fraud allegations that do not, and cannot, lend themselves to class treatment.

Some states allow a claim to go forward only "when there is no adequate remedy at law." *In re Grand Theft*, 251 F.R.D. at 147 n. 9. Some states require the defendant to have engaged in wrongdoing, *see, e.g., DCB Const. Co., Inc. v. Cent. City Dev. Co.,* 965 P.2d 115, 121–23 (Co. 1998) while others do not, *see, e.g., Schock v. Nash,* 732 A.2d 217, 232 (Del.1999). Sometimes, even courts within a single state offer varying interpretations of the standards of unjust enrichment claims. *See In re Sears, Roebuck & Co. Tools Marketing & Sales Prac. Litig.,* Civ. Nos. 05-4742 & 05-2623, 2006 WL 3754823, at *1 n. 3, 4 (N.D. Ill. Dec. 18, 2006).

Given these state-to-state variances in legal standards for unjust enrichment claims, Plaintiff's nationwide class action allegations should be stricken or dismissed, as nationwide class certification could never be appropriate as a matter of law. *Vulcan Golf, LLC v. Google Inc.,* 254 F.R.D. 521, 532–33 (N.D. Ill. 2008) (finding that differences in state law on unjust enrichment precluded certification of nationwide class).

## V. CONCLUSION

For the reasons set forth above, Kaspersky respectfully requests that this Court strike or dismiss Plaintiff's class action allegations in their entirety, or, at the very least, limiting the class allegations to Illinois-only.

Dated: April 18, 2014

Respectfully submitted by:

   /s/ Lisa M. Lilly

David Wynn
david.wynn@arentfox.com
Eric Roman
eric.roman@arentfox.com
ARENT FOX LLP
1675 Broadway
New York, NY 10019
(212) 484.3900
(212) 484.3990

Lisa M. Lilly
lml@lisamillylaw.com
LISA M. LILLY LLC
20 S. Clark Street, Suite 410
Chicago, IL 60603
(312) 781-2100

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 18, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

_____/s/ Lisa M. Lilly_____
